# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL McEWEN, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-06-2530 |
| | § | |
| SOURCERESOURCES.COM, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Sourceresources.com's ("Source") Second Amended Motion to Dismiss ("Source's Motion") [Doc. # 22], as supplemented [Docs. # 35, 41]. Plaintiffs[1] responded [Doc. # 24] (and supplemented that Response [Docs. # 30, 38]) to an earlier Motion to Dismiss filed by Xtria, LLC and Glenn Dinetz, prior defendants who have since been dismissed from this case. By agreement of the parties, the Court takes Plaintiffs' Response as its argument on the Motion to Dismiss. Also before the Court is Defendant Richard Childs's Motion to Dismiss ("Childs's Motion") [Doc. # 28], to which Plaintiffs have responded [Doc. # 31]. Having considered the parties' submissions, all matters of record, and applicable

---

[1] Plaintiffs are Cheryl McEwen, Donald Dippel, and John Kavanaugh, all former employees of Xtria, LLC. Defendants are SourcesResources.com and Richard Childs.

legal authorities, the Court concludes that Defendants' Motions to Dismiss should be **granted in part** and **denied in part**.

I.      **BACKGROUND**

Plaintiffs are all former employees of Xtria, LLC, an information technology company. Plaintiff Cheryl McEwen left Xtria to start her own company, Teneo Software Solutions ("Teneo"). Plaintiffs Donald Dippel and John Kavanaugh left Xtria, with which they had non-compete agreements, soon afterwards and joined McEwen at Teneo. Plaintiffs allege that, working together at Teneo, they developed software designed to "assist[] insurance companies and financial institutions to track and organize their insurance data that is used in the Collateral Protection Insurance ("CPI") market."[2] First Amended Complaint ("Amended Complaint") [Doc. # 12], at 6, ¶ 19. Xtria markets similar software, and when it learned of Teneo's product it took steps to discover whether Dippel and Kavanaugh were in violation of the non-compete agreements.

Plaintiffs allege that Xtria hired Childs, a private investigator, to learn whether they had inappropriate commercial contacts with Xtria's employees or customers. As part of this investigation, Plaintiffs believe that Childs employed Source to obtain their cell phone records, including, at a minimum, the numbers each Plaintiff dialed from his

---

[2]      Collateral protection insurance covers lien collateral for the benefit of the lien holder.

or her cell phone, without consent.[3] They assert that Source either "surreptitiously hacked into the telecommunications carriers' computers" or falsely represented to the carrier that they had authority to access the records of Plaintiffs' calls. Using one of these tactics, Childs and Source allegedly obtained a list of the telephone numbers Plaintiffs dialed during a several month period. There is no allegation that Defendants obtained transcripts, recordings, or any information other than the numbers dialed and the corresponding dates.[4]

Plaintiffs assert statutory claims under the 1996 Telecommunications Act ("the Telecommunications Act"), 47 U.S.C. § 222 *et seq.*, and the Stored Wire and Electronic Communications and Transactional Records Access Act ("SECTRA"), 18 U.S.C. § 2701 *et seq.* They also assert Texas common law claims of invasion of privacy, conversion, intentional infliction of emotional distress, and conspiracy. They argue that these latter claims fall under the Court's pendent jurisdiction, *see* 28 U.S.C.

---

[3]  Source also attempted to obtain records on a fourth person, John Basseti, who is not a party to this case.

[4]  There are three lists of calling data Defendants allegedly procured for Xtria. Each list is divided into a column of dates and a matching column of telephone numbers. Some of the numbers have handwritten notations that appear to be names and voicemail or answering machine messages. Others have notations showing that the number was dialed multiple times on that date (such as "x 2" or "x 7"). Two of the lists are typed; one is marked "David Dippel," and the other "Kavanaugh." According to unsigned correspondence before the Court, no phone records were available for McEwen. *See* Plaintiffs' Supplemental Briefing [Doc. # 36], Exhibit 9.

§ 1367(a), and, alternatively, that the Court has diversity jurisdiction over the case, *see* 28 U.S.C. § 1367(a).

Defendants move to dismiss pursuant to FED. R. CIV. P. 12(b)(6), arguing that Plaintiffs have failed to state a cognizable claim under either the Telecommunications Act or SECTRA. The pendent claims should be dismissed, they urge, because there is no valid federal question giving the Court subject matter jurisdiction, and they contend that diversity jurisdiction is inappropriate because Plaintiffs use frivolous damages calculations to reach the required amount in controversy.[5]

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true. *Id*. A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the allegations in his complaint. *Id*. (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

---

[5]  Defendants also contend in their Motions to Dismiss that complete diversity is lacking in this case. That argument is rejected because Defendant Xtria, whose disputed principal place of business was the basis of this argument, was dismissed by agreement from the case after these Motions were filed. *See* Order Granting Motion to Dismiss [Doc. #34]. It is now undisputed that there is complete diversity of the parties.

In deciding whether a claim should be dismissed, this Court must determine whether the complaint states a cognizable claim for relief when the pleading is construed in the light most favorable to the plaintiff and with doubts resolved on the plaintiff's behalf. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The plaintiff's complaint must contain allegations of every material point necessary to sustain recovery. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Allegations that merely create a suspicion that the plaintiff may have a right of action do not foreclose a motion to dismiss. *Id*. Furthermore, legal conclusions, conclusory allegations, and unwarranted deductions of fact do not suffice to prevent dismissal. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003). If the plaintiff fails to allege a necessary element to obtain relief, then dismissal is proper. *Campbell*, 43 F.3d at 975. A motion to dismiss should also be granted when a successful affirmative defense appears on the face of the pleadings. *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

### III.  ANALYSIS

#### A.  Telecommunications Act Claim

The 1996 Telecommunications Act obligates telecommunications carriers to "protect the confidentiality of proprietary information of and relating to . . . customers." 47 U.S.C. § 222(a). If a carrier violates the provisions of the Telecommunications Act,

"such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained." *Id.* § 206. A prospective plaintiff may "bring suit for the recovery of the damages for which such common carrier may be liable . . . in any district court of the United States of competent jurisdiction." *Id.* § 207. Nothing in the statute creates an explicit remedy against any entity other than the telecommunications carrier, and Plaintiffs acknowledge that the carriers here were "Verizon Wireless and Cingular," not Source or Childs. Amended Complaint, at 9, ¶ 25.

Plaintiffs' theory is that the Court may infer a cause of action against Source and Childs from the Telecommunications Act. They cite the four factors enumerated in *Cort v. Ash*, 422 U.S. 66, 78 (1975), to be considered when determining whether courts may infer a private cause of action from a statute: (1) Whether the plaintiffs are part of the class in whose interest the statute was enacted; (2) whether Congress intended to create a private remedy; (3) whether the remedy is consistent with the statute's underlying purpose; and (4) whether the matter is one traditionally relegated to the states. Of these, the second factor—Congress's intent to create a private remedy—is the most important. *See Casas v. American Airlines, Inc.*, 304 F.3d 517, 522 (5th Cir. 2002) (Congressional intent is the "touchstone of the *Cort* analysis.").

Congress not only intended to but expressly *did* create a private remedy with the Telecommunications Act. Congress, however, did *not* create the remedy Plaintiffs seek here—the Telecommunications Act's private remedy lies against telecommunications carriers, not third parties who trick those carriers into divulging private information. Whether a remedy against third parties can be inferred from the Telecommunications Act is a question of first impression in the Fifth Circuit. The Second Circuit analyzed this issue in *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001), and held that courts may not infer a different right of action from that set out in that Act. The *Conboy* plaintiffs sought to use the Telecommunications Act to recover damages from AT&T's violation of FCC regulations. The Second Circuit held that the "text of the Telecommunications Act also suggests that Congress did not intend to provide a private right of action." *Id*. at 253. Even though there are "other provisions in the Telecommunications Act that explicitly provide for a private right of action for a violation of FCC regulations," *id*. at 253, the omission of the asserted right "indicates that Congress did not intend to create a private right of action" such as the plaintiffs sought to infer, *id*. at 254. *Cf. Valdes v. Qwest Communications Intern., Inc.*, 147 F. Supp. 2d 116, 124 (D. Conn. 2001) (distinguishing *Conboy* and finding sufficient Congressional intent to infer a private right of action where a separate statute specified Congress's expectation that plaintiffs seek "other remedies available by law"). The

Court is persuaded by *Conboy*'s reasoning. Congress intended that certain plaintiffs have a private remedy, but it explicitly provided only a remedy against telecommunications carriers. Permitting attacks against third parties who are alleged to have deceived or stolen from the carriers would do little, if anything, to advance the legislation's stated goals. Thus, the "touchstone" factor of the *Cort* test weighs against inferring a new cause of action. *Casas*, 304 F.3d at 522

Nor do any of the other *Cort* factors support an inferred right of action. Plaintiffs are customers of a telecommunications carrier, which in the most general sense could be argued to make them part of the class in whose interest Congress created the Telecommunications Act. *See* 47 U.S.C. § 222(a). But this Court agrees with the analysis in *Conboy*. The purpose of the Act "is not to benefit individual plaintiffs but to 'protect the public interest in communications.'" *Conboy*, 241 F.3d at 254 (quoting *Lechtner v. Brownyard*, 679 F.2d 322, 327 (3d Cir. 1982)). The fact that the Telecommunications Act's right of action lies against carriers implies that Congress intended by the Act to benefit consumers who were injured by their carriers, not those who were injured by third parties. Thus, because Plaintiffs are not consumers injured by their telecommunications carrier, they are not among the class Congress intended to protect and this *Cort* element does not support inferring a new cause of action.[6]

---

[6] Because Congressional intent is the primary facet of the *Cort* analysis, the Court would not infer a new right of action even if it found the intended beneficiaries of the

The last two *Cort* factors also weigh against Plaintiffs. The presumptive purpose of the Telecommunications Act is to discourage *carriers* from divulging private information, not to punish third parties for obtaining it. Here, Plaintiffs assert that Source *tricked* the carriers into divulging the private information, or else stole it outright. Plaintiffs have not alleged any willful bad act or negligence on the carriers' part that would be dissuaded by a suit against these Defendants. Because an action against Source under the Telecommunications Act would not further the statute's goals, Plaintiffs' proposed remedy is not consistent with the statute's underlying purpose.

Finally, the moving force behind Plaintiffs' alleged injury—the violation of their privacy—is traditionally a concern of the states, as demonstrated by the common-law nature of their invasion of privacy claim. Thus, the fourth factor weighs in favor of not recognizing the new cause of action Plaintiffs request.

The Court will not infer a cause of action that Congress did not intend to create and that will not advance the purpose of the statutes Congress did enact. The Telecommunications Act does not give Plaintiffs an avenue for recovery against the named Defendants.

---

Telecommunications Act are telecommunications customers across the board, and thus that Plaintiffs were among the Act's intended beneficiaries.

**B.     SECTRA Claim**

Plaintiffs also assert a claim under the Stored Wire and Electronic Communications and Transactional Records Access Act ("SECTRA"). Unlike the Telecommunications Act, SECTRA explicitly creates a private cause of action as follows: "[A]ny . . . person aggrieved by any violation of this chapter . . . may, in a civil action, recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2707(a). Plaintiffs accuse Defendants of violating § 2701(a)(1), which prohibits persons from using unauthorized access to a "facility through which an electronic communication service is provided" to obtain "a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a)(1). Plaintiffs allege that Defendants obtained "communications" from their wireless providers. Defendants respond that the data they obtained—a list of outgoing telephone calls dialed by Plaintiffs, giving the number dialed and the date the call was made—are not "communications." No court has directly addressed the question of whether dialing information constitutes a "communication" under § 2701(a)(1). *See and compare In re United States*, 441 F. Supp. 2d 816, 833-34 (S.D. Tex. 2006) (addressing SECTRA's application to numbers dialed *after* a call has been connected).

The information Defendants allegedly obtained is analogous to that produced by a "pen register," which generally consists of a device or process that records phone numbers dialed. *See* 18 U.S.C. § 3127(3).[7] Defendants respond that SECTRA does not define the term "communication," and seek to rely on federal Fourth Amendment and criminal surveillance standards to analyze whether the calling data here is a "communication."

The Court agrees with Defendants that there is minimal Fourth Amendment protection for the sort of information produced by pen registers, *e.g.*, digits dialed, such as those at issue here, *see Smith v. Maryland,* 442 U.S. 735, 745-46 (1979), but is unpersuaded that dismissal in this case is appropriate. The Court need not turn to criminal law standards to resolve the issue of the definition of "communications."

---

[7] Section 3127(3) provides:

> "[T]he term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information . . . provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business."

Plaintiffs assert that Defendants obtained the information by accessing the carriers' standard billing information for Plaintiffs' accounts.

SECTRA incorporates by reference an express definition for the term "communication."

SECTRA is Chapter 121 of United States Code Title 18. Chapter 121 is only half of the Electronic Communications Privacy Act ("ECPA"). "ECPA is divided into Title I, which governs unauthorized interception of electronic communications, 18 U.S.C. §§ 2510-2522, and Title II, which governs unauthorized access to stored communications, 18 U.S.C. §§ 2701-2711." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 (2d Cir. 2005); *see also Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 459 (5th Cir. 1994) (ECPA Title I "proscribes, *inter alia*, the intentional interception of electronic communications"; Title II "proscribes, *inter alia*, intentional access, without authorization, to stored electronic communications."). Rather than spelling out a second time all of the terms included in Title I, Title II incorporates those definitions by reference. Section 2711(1) of SECTRA explicitly states that "the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section." 18 U.S.C. § 2711(1).

Section 2510 in ECPA defines both "wire communication" and "electronic communication." Plaintiffs specify that the records in issue relate to their wireless telephones. Thus, the term "electronic communication" is relevant here. An "electronic communication" under ECPA is "any transfer of signs, signals, writing,

images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

Relying on the plain language of the statute, the Court concludes for the purposes of Defendants' Motion to Dismiss that the records at issue, that is, phone numbers Plaintiffs dialed and the dates of calls, are encompassed by the definition of "electronic communication" under § 2510(12). Each of these pieces of information appears to qualify as a "transfer of . . . data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. § 2510(12).

The Court notes that the § 2510(12)(B) definition explicitly excludes "tone-only paging" devices (*i.e.*, pagers). Defendants argue that this exception should apply because such devices transfer only digits, such as those at issue. The Court is unpersuaded—Defendants have failed to offer any authority for their characterization of the pager exception. The statute does not exempt numerary data, but rather a single, narrow class of device that receives and displays a specific type of transmission of such data. The factual record is not presently developed. The Court cannot, and need not, at this pleading stage undertake a technical analysis of the operation of the telecommunications carriers' network processing of the digital information in issue.

That factual assessment, if material, must await discovery and trial. The Court for present purposes assumes that the numbers Plaintiffs dialed constitute "data . . . transmitted in whole or in part by [an] electromagnetic . . . system." 18 U.S.C. § 2510(12). For the purposes of the Motions, the information on what digits dialed by Plaintiffs' cell phones are "communications" under ECPA and SECTRA.

Plaintiffs' allegations thus overcome Defendants' Motions to Dismiss concerning SECTRA. The Court cannot conclude as a matter of law that Defendants did not violate SECTRA § 2701(a)(1).

### C.    Subject Matter Jurisdiction

Defendants' Motions, finally, assert that the Court lacks subject matter jurisdiction over this case because Plaintiffs' federal claims are not legally viable. Because, contrary to Defendants' arguments, the Court concludes that Plaintiffs' SECTRA claim survives the Motions, the Court has federal question jurisdiction in this case. *See* 28 U.S.C. § 1331.

The Court therefore also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state law claims. The Court need not address the issues Defendants raise concerning diversity jurisdiction at this time.

## IV. CONCLUSION AND ORDER

It is therefore

**ORDERED** that Defendant Sourceresources.com's Second Amended Motion to Dismiss [Doc. # 22] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that Defendant Richard Childs's Motion to Dismiss [Doc. # 28] is **GRANTED in part** and **DENIED in part**.

**SIGNED** at Houston, Texas, this **13th** day of **February**, **2007**.

Nancy F. Atlas
United States District Judge